O’NIELL, J.
The defendant was prosecuted for violating Act No. 201 of 1914, known as “The Stationary Firemen’s Act.”
Section 1 of the statute provides that a full day’s labor shall be eight hours and no more, and makes it a misdemeanor to compel a stationary fireman (as defined in section 5 of the act) to work longer than eight consecutive hours in one day, in a city having a population of 50,000 or more.
Section 5 defines the term, “stationary firéman,” as employed in the statute, to be:
“Any person employed in the generation of steam in stationary boilers in which coal is used as fuel.”
Section 3 provides that any person, or the president of any corporation, found guilty of violating any of the provisions of the 'statute shall be punished by a fine not less than $25 nor more than $100, and by imprisonment in the parish jail not longer than 15 days, or both, at the discretion of the court.
The defendant filed a demurrer, alleging: (1) That the statute violates the Constitution of the United States, especially the fourteenth amendment, and violates articles 1 and 2 of the Constitution of Louisiana, in that it seeks to deprive the defendant of his liberty and property without due process of law, and to deny him the equal protection of the laws; (2) that the statute also violates both Constitutions by attempting to make arbitrary, unequal, and discriminating classifications, and by attempting to discriminate improperly as to the persons on whom the penalty is sought to be imposed; (3) that the statute, if enforced, would destroy the right of freedom of contract; and (4) that there is a confusion as to the penalty sought to be imposed by the statute.
Judgment was rendered in favor of the defendant, sustaining his demurrer, and the state has appealed.
[1,2] A statute very similar to the one under consideration was enacted in 1912 (Act No. 245 of 1912), and was pronounced unconstitutional and invalid. See State v. Barba, 132 La. 768, 61 South. 784, 45 L. R. A. (N. S.) 546, Ann. Cas. 1914D, 1261.
Counsel for the state point out that the classification in Act No. 245 of -1912,- which was held to be discriminatory and illegal, does not appear in Act No. 201 of 1914; and they say that the only classification in this last statute is that which results from making it enforceable only in cities having a population of 50,000 or more.
The statute of 1912 applied only to establishments running day and night, and not to those operating only during the day or only during the night; and it contained a proviso that it should not apply to persons engaged in the petroleum industry, or in any cotton gin, sugar plantation, or sawmill business.
This court held that the discrimination in Act No. 245 of 1912 was arbitrary and unreasonable, and that the statute was invalid. But it was also found that the legislation was fundamentally invalid because it sought *157 to abridge the constitutional right of freedom of contract, without any regard for the morals, health, or safety of the public or of the persons sought to be affected by the statute, and therefore went beyond the police power of the state.
The statute under consideration omits the restriction of day and night work and the exemption of those engaged in the petroleum industry or in a cotton gin or on a sugar plantation or in the sawmill business; but it contains the provision, which was not in the statute of 1912, that it shall apply only to establishments in cities containing 50,000 or more inhabitants.
It is obvious, from the restriction of this statute to the very limited class of “persons engaged in the generation of steam in stationary boilers in which coal is used as fuel” in a city having 50,000 inhabitants or more, that this legislation has no relation to the health or morals or safety of the public, or to the health, morals, or safety of the class of persons to whom the statute is confined in its operation.
What reason of public policy can there be for discriminating against the employers of firemen using stationary boilers in which coal is used as fuel in a city having a population of 50,000 or more, and against employers of firemen using portable boilers, or burning wood, coke, or fuel oil, or operating in a city having a population less than 50,000?
A fireman employed at a stationary boiler in which coal is used as fuel, in a city having a population of 50,000 or more, is not a ward of the state. He does not need the protecting arm of the Legislature, ñor deserve its interference with his freedom of contract or independence of judgment, any more than a fireman employed at a portable boiler, or firing wood or coke or fuel oil, or firing coal under a stationary boiler in a city of less than 50,000 inhabitants.
It is the duty of the courts to enforce the state’s police regulations enacted by the Legislature in good faith and with reasonable and appropriate regard for the protection which the state owes to the life, health, and property of her citizens. Patterson v. Kentucky, 97 U. S. 501, 24 L. Ed. 1115. The fourteenth amendment was not intended to hamper — or to authorize the courts to interfere with — the state’s exercise of its police power to regulate and promote the morals, health, and safety of her citizens. Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923. The freedom of the right of citizens to make contracts is subject to such restrictions as the Legislature may impose, in good faith and with a reasonable and appropriate regard for the welfare of the citizens, in the exercise of the police power of the state. Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780. But a statute containing a mere pretense of promoting or protecting public health or public safety, and having no real or reasonable relation to its pretended object, is añ abuse of the police power of the state, and, in so far as it invades the fundamental rights of her citizens, it is the province and duty of the courts to adjudge such a subterfuge invalid, and to uphold the Constitution. Mugler v. Kansas, 123 U. S. 623, 661, 8 Sup. Ct. 273, 31 L. Ed. 205; Minnesota v. Barber, 136 U. S. 313, 350, 10 Sup. Ct. 862, 34 L. Ed. 455; Lochner v. New York, 198 U. S. 56, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 560, 22 Sup. Ct. 431, 46 L. Ed. 679; Hennington v. Georgia, 163 U. S. 299, 303, 16 Sup. Ct. 1086, 41 L. Ed. 166.
As was said by this court, in the case of State v. Gantz, 124 La. 541, 50 South. 524, 24 L. R. A. (N. S.) 1072, referring to a statute seeking to regulate the work of electricians:
“The right to work cannot be restrained without reason. Constituted authorities have been careful not to sanction unreasonable interference with the right. Here, not only is there no good reason, but there is discrimination.”
*159 The defendant’s counsel suggests in his brief that, as New Orleans is the only city in Louisiana having a population of 50,000 or more, this statute violates the spirit — if not the letter' — of the inhibition, contained in article 48 of the Constitution, that the General Assembly shall not pass any local or special law regulating labor, trade, etc. That question, however, was not presented in the demurrer; it was not passed upon by the city court; and our conclusion on the issues which are properly presented renders it unnecessary to consider whether this is or is not a local or special law seeking, to regulate labor. It would also be in vain to consider what effect the confusion in the penalty sought to be imposed might have on the validity of the statute if it were otherwise valid.
Our conclusion is that Act No. 201 of 1914 is an arbitrary and unreasonable discrimination against the employers and employSs embraced within its provisions; that it invades the fundamental right of freedom of contract ; that it has no real or reasonable relation to public health, public morals, or public safety, and is therefore beyond the police power of the state.
The judgment appealed from is affirmed.