PRICE, Judge.
Plaintiff, a licensed funeral home, brought this action in April, 1962, against the Louisiana State Board of Embalmers, seeking a declaratory judgment and injunction, alleging that certain rules and regulations promulgated by the Board were ultra vires in that they were in excess of its authority as granted in the legislative act creating the Board. Plaintiff further sought to have declared illegal and to enjoin the action of the Board in seeking to prohibit plaintiff from advertising that it would credit the full face value of any valid burial insurance policy upon service performed by it. The regulations of the Board were alleged to be unjust, arbitrary, discriminatory, capricious, unrelated to public health, safety, welfare or morals, and in violation of the free speech and press provisions of the First Amendment to the Constitution of the United States of America and of Article 1, Section 3 of the Constitution of Louisiana, and of the due process and equal protection clauses of the Fourteenth Amendment of the United States and of the due process clause of Article 1, Section 2 of the Constitution of Louisiana.
The rules of the Board which were complained of by plaintiff prohibited (1) the payment directly or indirectly of any money or other gratuity to secure business; (2) a solicitation of business in person “and/or” by agents commonly known as “cappers” or “steerers”; (3) unprofessional, unethical, or dishonorable conduct; (4) the ,use of untruthful, deceptive, unethical, misleading or improbable statements in advertising, or in the sale of merchandise.
Plaintiff’s newspaper advertisement which precipitated the Board’s action read as follows:
“SERVICES BY OSBORN FUNERAL HOME NO SERVICES SCHEDULED
We Will Credit the Face Value of Any Valid Burial Policy Against the Cost of an Osborn Service.”
All funeral directors holding licenses under the Board were notified by the Board that it considered this type of advertising to be in violation of the rules of the Board and that violations would result in action being taken by the Board to cancel or suspend the violators’ licenses.
After trial on the merits, the district court found that the rules and regulations were promulgated under valid statutory authority and were not in violation of either the Federal or State Constitutions. Judgment was entered dismissing plaintiff’s demands and plaintiff appealed to this Court.
The legislature amended the law creating the Board of Embalmers in the legislative sessions of 1963 and 1966. These acts were passed prior to rendition of the original judgment of the district court. The 1966 act substantially incorporated into statutory form all of the rules and regulations of the Board which were complained of by plaintiff. The pertinent part of this act, now cited as LSA-R.S. 37:846, reads as follows:
“A. The board may refuse to grant, refuse to renew, or may suspend or revoke, any license when applicant or licensee is found guilty of any of the following acts or omissions:
******
“(2) Paying, giving or offering, directly or indirectly, orally or in writing, *147 any money, credit, discount, gratuity or other thing of value as an inducement for the business of a prospective customer; provided that this prohibition shall not be in any way construed as prohibiting the execution or servicing by the parties thereto of any funeral service contract of the type recognized or required by any provisions of R.S. Title 22.
“(3) Solicitation of business, either in person or through agents commonly known as ‘cappers’ or ‘steerers.’
‡ ‡ Jji % ‡ ífc
“(5) Unprofessional, unethical or dishonest conduct.
‡ H< ‡ ‡ $1
“(10) Use, in advertising or in the sale of merchandise or services, untruthful, deceptive, unethical, misleading or improbable statements, or any practice, offer or inducement prohibited by any provisions of this Section.
^ í{í h* ‡
“(14) Violation of any law of this state relating to the embalming, burial or disposal of dead human bodies, or any of the provisions of this Chapter, or of the rules and regulations of the Louisiana State Board of Embalmers or the applicable rules and regulations of the Louisiana State Board of Health; or promoting, participating in, operating or servicing, directly or indirectly, any burial insurance association or society, or issuing, giving, selling or distributing any contract, certificate or coupon, granting or promising to the holder, his representatives or assigns, any burial benefits, or credit thereon, unless such association, society, contract, certificate or coupon is authorized and approved by Louisiana law.”
As the enactment of the Board rules into statutory form was accomplished by the Legislature after the suit had been tried but prior to judgment, the plaintiff had not been afforded the opportunity of attacking the constitutionality of the amended statute.
In the opinion of this Court reported in 194 So.2d 185, this case was remanded to the First District Court for Caddo Parish to allow plaintiff to file proper amendments to make the Attorney General of Louisiana a party to the suit and to afford plaintiff an opportunity to supplement the record with appropriate pleadings setting forth more specifically the basis of its attack on the unconstitutionality of the section of the Act above referred to which adopted the rules of the Board already under attack.
Upon remand plaintiff joined the Attorney General and specifically pleaded the unconstitutionality of LSA-R.S. 37:846, subd. A. Sections (2), (3), (5), (10) and (14), urging that these sections are in violation of the Federal and State Constitutions for substantially the same reasons urged in plaintiff’s original petition attacking the constitutionality of the rules of the Board. Plaintiff also sought to inject into the case for the first time the allegation that these sections of the statute under attack and the action of the Board are in violation of the anti-trust provisions of Section 14, Article 19 of the Louisiana Constitution.
The district court upheld the validity of the amended statute and adhered to its opinion rendered on the original trial of the case. From the judgment rejecting plaintiff’s demands, plaintiff perfected this appeal.
There is no doubt that the Legislature has the authority under proper exercise of the police power of the State to regulate the business of funeral directing and the science of embalming. Louisiana State Board of Embalmers v. Britton, 244 La. 756, 154 So.2d 389 (1963). The Supreme Court in this case held that the care and burial of the dead are directly related to the public health, safety and welfare.
*148 Thus we have but one issue to be resolved in this case. May the Board or the Legislature in exercising this regulatory power prohibit a properly licensed funeral director from advertising that he will allow a credit in the amount of the full face value of any burial insurance policy on a funeral performed by him?
There are certain facts which are not in dispute which are important for the proper resolution of the issue in this case. Defendants admit that the advertisement used by plaintiff was truthful and was not intended to deceive or mislead anyone. It is further admitted that the granting of a discount by the allowance of a credit on the cost of a funeral is not a violation of the statute involved.
It is contended by defendant that the action of plaintiff in advertising its willingness to grant a discount by allowing a credit in the amount of any burial insurance policy constitutes an inducement to prospective customers and is a violation of sub-sections (2) and (10) of Section A of the amended statute.
Plaintiff’s position is that the public must be informed by this means so that it may compete with other funeral establishments which have a connection with a burial insurance company. The most serious attack on the statute is plaintiff’s contention that it is being deprived of the equal protection of the law by the exemption from the effect of sub-section (2) of those funeral directors furnishing services under a contract with a burial insurance company.
It is further contended by plaintiff that a large percentage of funeral homes in the state have direct connections with burial insurance companies and that the practice of designating themselves as the official funeral directors in the policies issued by the associated insurance companies results in these particular funeral establishments being allowed to solicit business through the sale by agents of burial insurance policies. We believe that the evidence establishes this to be true. The evidence also reflects that in most cases where a funeral home is named as the official funeral director in a burial insurance policy, the funeral home and the insurance company have common ownership.
Defendant offered the testimony of several funeral directors who have been prominent in the business of funeral directing and burial insurance in this State for a number of years. In their testimony they attempted to explain the necessity of designating a particular funeral home as the official funeral director in a burial policy. This testimony disclosed that the insurance code prohibits an insurance company from engaging in any other business, thus requiring it to contract with a funeral home to accomplish the insurance company’s obligation under the policy to furnish a funeral service of the type provided for in the policy. Defendant has also shown that the filing of a contract with the Insurance Commissioner in which a certain funeral home is to provide the service reduces the reserve requirement of the insurance company allowing it to reduce rates. Defendant contends that this practice of the insurance company contracting with a named official funeral director is essential to continue in effect the system of burial insurance in the State of Louisiana. It is further contended that this method is in the public interest and is beneficial to the public welfare as it assures a greater number of people a decent funeral.
In practical effect the exclusion from the prohibitions contained in sub-section (2) of the statute as amended has given a preference to those licensed funeral directors who have contracts with burial insurance companies naming them as the official establishments. These contracts by their own terms are agreements to procure prospective business. Defendant’s witnesses, who consist mostly of funeral establishment owners with burial insurance contracts, admit that the funeral directors possessing these contracts give a discount on each burial policy serviced. It is therefore *149 obvious that the Legislature has passed an act which will affect one segment of a class of persons differently from the remainder of the class.
In the case of City of Lafayette v. Justus, 245 La. 867, 161 So.2d 747 (1964), the Supreme Court of this State in ruling on the constitutionality of a city ordinance limiting the size of signs advertising gasoline prices made the following comment:
“It is recognized that the police power may be exerted in the form of legislation where otherwise the effect would be to invade rights guaranteed by the Constitution, but this power can be exerted only when such legislation bears a real and substantial relation to the public health, safety, morals or some other phase of the general welfare. A legislative body cannot, however, ‘under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them. * * *’ Louis K. Liggett Co. v. Baldrige, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204 (1928). And where it clearly appears that there has been an abuse of the police power in the enactment of legislation, it is the court’s province and duty to decree the offending statute invalid. State v. Legendre, 138 La. 154, 70 So. 70, 71 L.R.A.1916B, 1270 (1915).”
Although the Legislature under the police power may prescribe various rules to effectively regulate the business of funeral directing and embalming and may delegate with proper guidelines the authority to regulate to an administrative board, the rules adopted must have a relationship to public health, welfare or morals.
Defendant urges that the purpose behind the present statutory prohibition and former board rules prohibiting the granting of discounts in inducing prospective customers is to prevent the infiltration into the funeral business of undesirable persons who might use such advertising methods as are herein complained of to prey upon an unsuspecting public.
They contend that it would be necessary for such persons to “pad” the price quoted for caskets or funeral services in order for them to make a profit after crediting the value of a burial insurance policy on the cost of a funeral.
This argument of defendants has been refuted by plaintiff as it points out that any untruthful or misleading statements either in advertising or sale of merchandise would be a violation of Section (10) of the statute and the offenders’ licenses could be revoked because of such practice.
It is difficult to find any benefit to the health or welfare of the public by prohibiting the advertisement complained of by defendant in this case. There seems to be more logic in the argument that the advertising of plaintiff’s willingness to credit the face amount of any burial insurance policy on the cost of a funeral service performed by plaintiff, actually benefits the public by informing families of deceased persons that they may use a different funeral director than the one named in an insurance policy as the official director, without suffering a financial loss.
Although the case was remanded by this Court to the trial court for inclusion of necessary parties defendant and a consideration of constitutional issues raised by plaintiff, the subsequent opinion of the district judge did not discuss the constitutional question. The district court merely found that the advertisement of plaintiff was in violation of the prior regulations of the Board and R.S. 37:846.
We are of the opinion that the specific exemption from the effect of Sub-section A(2) of R.S. 37:846 of funeral directors who service burial policies in which they are the named official funeral director, gives them a preference under the law which is denied to others of the same class. These particular funeral directors may *150 give a discount on the price of a funeral to the burial insurance company. The evidence even discloses that they customarily do give such discounts in practically all cases. There could be no other motive in the granting of this discount except to procure the business of all policy holders of the burial insurance company by contracting to service all of its obligations to furnish funerals under its policies.
In the case of Simmons v. City of Shreveport, 221 La. 902, 60 So.2d 867 (1952), the Supreme Court of the state said:
“Although the decision of the United States Supreme Court in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 1073, 30 L.Ed. 220, was handed down in the year 1886, the principle of constitutional law therein asserted has not changed through the corridors of time. In that case it was said:
‘Though the law itself be fair on its face, and impartial in appliance, yet, if it is applied and administered by public authority with * * * an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution. * *
We are of the opinion that the ruling of the Louisiana State Board of Embalmers of January 9, 1962, and R.S. 37:846, A-(2), deny plaintiff the equal protection of law as provided by the constitution of this State and of the United States.
For the foregoing reasons it is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, OSBORN FUNERAL HOME, INCORPORATED, and against the defendants, LOUISIANA STATE BOARD OF EMBALMERS AND FUNERAL DIRECTORS and JACK P. F. GREMILLION in his capacity as Attorney General of Louisiana, decreeing R.S. 37:846 (A) (2), as amended by Act 19 of 1966 to be unconstitutional and void as violative of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States of America and of the due process clause of Section 2 of Article 1 of the Louisiana Constitution of 1921 insofar as such statutes prohibit a funeral director from advertising that he will credit the face value of any valid burial policy against the cost of his service or from giving such credit.
It is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, OSBORN FUNERAL HOME, INCORPORATED, and against the defendant, LOUISIANA STATE BOARD OF EMBALMERS AND FUNERAL DIRECTORS, recognizing the right of the plaintiff to make advertisements worded as follows:
“We will credit the face value of any valid burial policy against the cost of an Osborn service.”
It is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, OSBORN FUNERAL HOME, INCORPORATED, and against the defendant, LOUISIANA STATE BOARD OF EMBALMERS AND FUNERAL DIRECTORS, enjoining and restraining the defendant, its members, agents, officers, employees and representatives, from prohibiting or attempting to prohibit advertisements by the plaintiff worded as set forth above or from giving credit on such policies.
It is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, OSBORN FUNERAL HOME, INCORPORATED, and against the defendant, LOUISIANA STATE BOARD OF EMBALMERS AND FUNERAL DIRECTORS, enjoining and restraining the defendant, its members, agents, officers, employees and representatives, from refusing to grant, refusing to renew, suspending or revoking the license *151 or registration certificate of the plaintiff as a funeral establishment, or the license or registration certificates held by any officer or employee of the plaintiff under the provisions of R.S. 37:831 et seq. as amended because of the making by the plaintiff or any of its officers, employees, agents, or representatives of any advertisements worded as set forth above or from giving credit on such policies.
All costs of this appeal are taxed against appellee.