997 So.2d 137 (2008)
STATE of Louisiana, Appellee
v.
Justin Latron GLOVER, Appellant.
No. 43,584-KA.
Court of Appeal of Louisiana, Second Circuit.
October 22, 2008.
*139 Louisiana Appellate Project, by G. Paul Marx, Lafayette, for Appellant.
Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Geya D. Williams Prudhomme, Assistant District Attorneys, for Appellee.
Before STEWART, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Justin Latron Glover, was convicted of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. He was sentenced to 13½ years' imprisonment at hard labor without the benefit of probation or suspension of sentence, plus a fine of $1,000.00 and court costs. Glover appeals his conviction and sentence, which, for the following reasons, we affirm.

FACTS
This criminal proceeding against Justin Latron "Chubby" Glover was the result of an incident that took place on February 27, 2006. Following a disagreement between Glover, his then girlfriend, Rodetria Morris, and her sister, Andramada Mosely, Glover fired several shots at the women. Glover was originally charged by bill of information with three counts of illegal use of a weapon and one count of aggravated assault with a firearm. The bill of information was subsequently amended to charge him with one count of possession of a firearm by a convicted felon. The matter came for bench trial, where several witnesses testified. Before resting its case, the state presented evidence in the form of a bill of information and trial court minutes that Glover had been previously convicted of simple burglary on August 1, 2002, which is one of the felonies enumerated in La. R.S. 14:95.1(A). Glover stipulated to this fact. Following the trial, Glover was found guilty as charged.
A sentencing hearing was set. Prior to sentencing, Glover filed motions for new trial and for post-verdict judgment of acquittal, both of which were denied. After Glover waived sentencing delays, the trial court proceeded with the sentencing hearing. After listing various aggravating factors and Glover's criminal history, the trial court imposed a sentence of 13½ years' imprisonment at hard labor without the benefit of probation or suspension of sentence, along with a fine of $1,000.00 plus court costs. The instant appeal by Glover ensued.

DISCUSSION

Sufficiency of the Evidence
On appeal, Glover raises two assignments of error. First, he argues that the trial court erred, because the evidence was insufficient for conviction. Specifically, he argues that the witnesses offered by the state were not credible, and there was no corroboration or proof of possession of a weapon by him. We disagree.
Louisiana R.S. 14:95.1 provides, in pertinent part, that it is unlawful for any person who has been convicted of certain enumerated felonies to possess a firearm *140 within 10 years of the completion of the sentence imposed. In order to prove possession of a firearm by a convicted felon pursuant to La. R.S. 14:95.1, the state must prove the following: (1) defendant possessed a firearm; (2) defendant was previously convicted of an enumerated felony; (3) the absence of the 10-year period of limitation; and, (4) general intent to commit the offense. State v. Quails, 40,630 (La.App. 2d Cir.01/27/06), 921 So.2d 226. The general intent to commit the offense of possession of a firearm by a convicted felon may be proven through the actual possession of the firearm or through the constructive possession of the firearm. State v. Johnson, XXXX-XXXX (La.04/14/04), 870 So.2d 995.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Murray, 36,137 (La.App. 2d Cir.08/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.09/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.02/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La. 11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App. 2d Cir.05/09/07), 956 So.2d 769.
Glover argues that the evidence in the present case was insufficient to convict, because the only two witnesses who could place the gun in his hand were biased, had criminal records and gave inconsistent accounts of the events of that night. Glover also points to the absence of the weapon and the state's failure to call the other two individuals who allegedly accompanied the victims on the night in question. Finally, he argues that the evidence established that he was in no condition to have followed the victims and shoot at them.
At trial, Rodetria Morris testified that around 7:00 p.m. on the date in question she and Glover had been arguing outside in the Cedar Grove neighborhood of Shreveport, Louisiana. During the argument, Glover took Morris' cell phone from her and refused to give it back. She stated that he pushed her to the ground and cursed at her, after which she walked to a nearby liquor store and called the police. Two officers responded and drove her to the house where her sister, Andramada "Drama" Mosely lived. While at her sister's, *141 Morris repeatedly called her cell phone in an attempt to reach Glover and demand the phone's return. He eventually answered the phone and told her that he would give her the phone back, but indicated that she would have to come get it from him.
Between 11:00 p.m. and midnight, Morris testified that she walked to Glover's residence accompanied by Drama, her brother, and one of her brother's friends. After they arrived, Glover, Morris and Drama stood on the porch of the home and continued to argue about the phone. Morris testified that a man walked up and told Glover to give her the phone which he did. After doing so, Morris claimed Glover turned to his right as though he was reaching for something. When he did so, Drama struck Glover in the face with a flashlight she had been carrying. After a brief struggle, during which the flashlight was ripped out of Drama's hand, Morris and her sister left the porch as Glover and Drama continued to exchange obscenities. After they were about a block away, Morris saw Glover run up behind them, stop under a street light and fire five shots in her direction using a "chrome or silver" colored gun. She stated that because he was under a street light she could clearly tell it was Glover. Morris stated that she knew Glover had a weapon because she had seen it tucked in the back of his pants during their earlier argument. Morris reported the incident to police the following day.
Drama also testified at the trial. Drama described that on the date in question she had been sleeping when Morris showed up and asked her to accompany her to retrieve her phone from Glover. She stated that after they arrived at Glover's residence, an argument ensued between Morris and Glover, but Morris eventually obtained possession of the phone. The parties then became involved in a scuffle during which Drama struck Glover in the face with a flashlight. According to Drama, Morris stepped off the porch and exited the front yard. Drama described that Glover then pulled out a.38 revolver and pointed it at hershe had remained on the porch. Drama backed off the porch together with Morris and the two other members of their group and began to walk away. When they got one or two blocks away, Drama said that Glover appeared under a street light and began firing shots at the group. No one was injured by the shots and the parties returned to Drama's house. She did not recall whether she had ever spoken to the police but knew that her sister had reported the incident.
Detective Staycy Doolittle of the Shreveport Police Department testified that on the morning following the incident she took a report from Morris about the prior evening's events. Detective Doolittle testified as to the facts as they were reported by Morris, which facts were mostly identical to the facts Morris testified to at trial.
Glover called two witnesses at trial. First called was Keisha Fisher who testified that she resided at the residence where the altercation between Glover, Morris and Drama took place. Fisher did not see the incident involving the gun. She only testified as to seeing Glover after the incident and that his face was bloodied. She also stated that there was blood splattered on her front porch. The second witness called by Glover was Anthony Russell. Russell came upon Glover, Morris and Drama when they were arguing over the cell phone. He testified that Drama struck Glover with the flashlight after Glover had returned the cell phone to Morris. According to Russell, he remained with Glover for 30 minutes, during which time he claims Glover never left. *142 Russell testified that he never saw Glover brandish a weapon.
Our review of the record reflects that the state presented ample evidence showing that Glover was in possession of a firearm on three different occasions on the day in question, including during his initial argument with Morris, on the porch of his residence later that evening, and in the street shortly thereafter when he fired the weapon in the victims' direction. The state presented evidence that he was convicted of simple burglary on August 1, 2002, which is one of the felonies enumerated in La. R.S. 14:95.1(A) (Glover stipulated to this fact) and that the 10-year limitations period had not expired. Therefore, the state presented sufficient evidence from which a rational fact finder could convict Glover for possession of a firearm by a convicted felon.
On appeal, Glover relies on Russell's testimony that Glover never pulled out a firearm and that the men were together for 30 minutes after the encounter; however, it is clear that the trial court discounted Russell's testimony as not credible. Moreover, Glover points to what he believes to be inconsistencies in the testimony of Morris and Drama. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, XXXX-XXXX (La.01/26/00), 775 So.2d 1022. This court should not overturn that assessment in light of the testimony directly contradicting the alibi witness's version of events, nor question the discretion of the trial court in overlooking minor discrepancies in testimony by witnesses.
Nor is Glover's assertion persuasive that the victims' testimony should be discounted due to the victims' criminal records. While the criminal record of a witness can be relevant to her credibility, all three of the eyewitnesses to the events in question have criminal records and the most extensive record belongs to Glover's alibi witness, Russell. Furthermore, a witness's credibility does not rest entirely on the presence or absence of a criminal record. In the instant case, the testimony of Glover's two alibi witnesses was not consistent with his post-arrest statement to Detective Doolittle that after being struck with the flashlight he had gone directly to a friend's house to get band-aids for his nose.
It is clear that after listening to the testimony of all the witnesses, the trial court found Russell's testimony not to be credible. The trial court placed a reasonable construction on the evidence in making its finding that Glover possessed a firearm and the evidence supports the trial court's finding that he was guilty beyond a reasonable doubt of possession of a firearm by a convicted felon. Therefore, this assignment is without merit.

Sentencing
In his second assignment of error, Glover argues that the 13½ year sentence imposed by the trial court is excessive because he was injured in the altercation with the victims. The state argues that the sentence is not excessive in light of Glover's criminal history, absence of mitigating factors, and his post-arrest behavior in making threatening phone calls to the victim. We agree.
Pursuant to La. R.S. 14:95.1(B), a person convicted of possession of a firearm by a convicted felon "shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars"
*143 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2d Cir.02/28/07), 953 So.2d 890, writ denied, XXXX-XXXX (La.03/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir.01/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.03/11/05), 896 So.2d 57 and 2004-2380 (La.06/03/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. Haley, 38,258 (La.App. 2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La. App. 2d Cir. 12/13/06), 945 So.2d 277, writ denied, XXXX-XXXX (La.09/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.01/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App. 2d Cir.01/24/07), 948 So.2d 379.
Here, Glover's conviction warranted a sentence of imprisonment at hard labor somewhere between the statutory range of 10 to 15 years. In imposing sentence, the trial court listed several of the aggravating factors delineated in La. C. Cr. P. art. 894.1(B) as bearing on the sentence imposed. Among these was Glover's discharge of a dangerous weapon, his deliberate cruelty to the victim, the use of violence, and the potential for great bodily harm posed by his conduct. The trial court also reviewed Glover's criminal history including his misdemeanor conviction for domestic abuse battery against one of the same victims. The trial court also stated that it had reviewed transcripts of phone calls allegedly placed by Glover to Morris in which he made threats towards the victims. Finally, the trial court noted the only mitigating factor it was aware of was Glover's age.
Glover's argument as to the excessiveness of the sentence here is limited to the contention that the victims bore responsibility for the altercation and that he was injured by one of the victims. Glover, however, was convicted and sentenced for possession of a firearm, which the evidence indicates he had possession of well before he got struck in the face with the flashlight. The purpose of criminalizing the possession of a firearm by a convicted felon is to limit the possession of firearms by persons who, by their past commission *144 of certain specified serious felonies, have demonstrated dangerous disregard for the law and the present potential threat of further or future criminal activity. State v. Amos, 343 So.2d 166 (La.1977). In other words, had Glover not been in possession of the firearm in the first place, he would not have had the opportunity to respond to the alleged provocation in the manner he did. The victims played no role in whether Glover possessed the firearm, the crime for which he was sentenced.
Considering the record, which includes Glover's extensive criminal history and the lack of mitigating factors, the sentence of 13½ years (which is the middle of the range allowed by the statute) does not shock the sense of justice. Thus, the trial court, which adequately articulated its reasons for sentence, did not abuse its wide discretion, and the sentence is not constitutionally excessive. This assignment is therefore without merit.

CONCLUSION
For the foregoing reasons, the sentence and conviction of Justin Latron Glover are affirmed.
AFFIRMED.